IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN KITZMAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNUM LIFE INSURANCE ) <br> COMPANY OF AMERICA ) <br> ) <br> Defendant. ) <br> ) | No.   21-CV-5838 |

# COMPLAINT

Now comes the Plaintiff, BRIAN KITZMAN, by his attorney, JENNIFER M. DANISH and PAMELA SWIATKOWSKI of BRYANT LEGAL GROUP PC, and complaining against the Defendant, UNUM LIFE INSURANCE COMPANY OF AMERICA, states as follows:

**Jurisdiction and Venue**

1. Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of employee welfare benefit plans. In addition, this action may be brought before the Court pursuant to 28 U.S.C. § 1331, which gives the district courts jurisdiction over actions that arise under the laws of the United States.

2. The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeals of benefit denials. Those avenues of appeal have been exhausted.

3. Venue is proper in the Northern District of Illinois. 29 U.S.C. § 1132(e)(2), 28 U.S.C. § 1391.

**Nature of Action**

4. This is a claim seeking payment of long term disability ("LTD") (Claim No. 18572082) under the employee welfare benefit plan provided to him as employee of Stanard & Associates, Inc. which is issued and administered by Unum Life Insurance Company of America as Group Policy No. 218185. (Plan/policy marked as Exhibit A). This action is brought pursuant to ERISA § 502 (a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)).

5. Plaintiff also seeks attorneys' fees pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g).

6. The Policy was issued in Illinois, and the policy confirms explicitly that Illinois is the governing jurisdiction. (Exhibit A, Pages 2, 35).

7. The Policy renews on an annual basis.

8. The State of Illinois prohibits the inclusion of discretionary clauses in both health and disability insurance policies. According to 50 Ill.Admin.Code. § 2001.3, entitled, "Discretionary Clauses Prohibited":

> No policy, contract, certificate, endorsement, rider application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

50 Ill. Adm. Code §2001.3 (2010); 29 Ill. Reg. 10172, effective July 1, 2005.

9. Section 2001.3 applies to an insurance policy at the time of renewal.

**The Parties**

10. At all times relevant hereto, the Plaintiff, Brian Kitzman ("Dr. Kitzman" or "Plaintiff"), currently age 53, was a resident of Oak Park, Illinois.

11. Defendant, Unum Life Insurance Company of America ("Unum" or "Defendant"), was at all times hereto doing business within the Northern District of Illinois.

12. At all times relevant hereto, the disability policy constituted part of an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

13. Plaintiff received coverage under the Plan as a benefit of his employment with Stanard & Associates, Inc.

14. Plaintiff was a "participant" in the plan as defined by 29 U.S.C. § 1002(7).

## Statement of Facts

15. Dr. Kitzman was diagnosed with stage 4 prostate cancer, which had metastasized to his spine and pelvis, on August 22, 2016.

16. Since that time, Dr. Kitzman has continued to receive ongoing treatment for his prostate cancer, other associated ailments, and side effects of the treatment of his underlying condition.

17. Despite Dr. Kitzman's condition and the associated symptoms and side effects, he continued to work as an Industrial Organizational Psychologist for Stanard & Associates, Inc.

18. *The Dictionary of Occupational Titles* identifies the occupation "Psychologist, Industrial-Organizational" by Code 045.107-030 and details:

> Develops and applies psychological techniques to personnel administration, management, and marketing problems: Observes details of work and interviews workers and supervisors to establish physical, mental, educational, and other job requirements. Develops interview techniques, rating scales, and psychological tests to assess skills, abilities, aptitudes, and interests as aids in selection, placement, and promotion. Organizes training programs, applying principles of learning and individual differences, and evaluates and measures effectiveness of training methods by statistical analysis of production rate, reduction of accidents, absenteeism, and turnover. Counsels workers to improve job and personal adjustments. Conducts research studies of organizational structure, communication systems, group interactions, and motivational systems, and recommends changes to improve efficiency and effectiveness of individuals, organizational units, and

organization. Investigates problems related to physical environment of work, such as illumination, noise, temperature, and ventilation, and recommends changes to increase efficiency and decrease accident rate. Conducts surveys and research studies to ascertain nature of effective supervision and leadership and to analyze factors affecting morale and motivation. Studies consumer reaction to new products and package designs, using surveys and tests, and measures effectiveness of advertising media to aid in sale of goods and services. May advise management on personnel policies and labor-management relations. May adapt machinery, equipment, workspace, and environment to human use. May specialize in development and application of such techniques as job analysis and classification, personnel interviewing, ratings, and vocational tests for use in selection, placement, promotion, and training of workers and be designated Psychologist, Personnel (profess. & kin.). May apply psychological principles and techniques to selection, training, classification, and assignment of military personnel and be designated Psychologist, Military Personnel (profess. & kin.). May conduct surveys and tests to study consumer reaction to new products and package design and to measure effectiveness of advertising media to aid manufacturers in sale of goods and services and be designated Market-Research Analyst (profess. & kin.) II.

19. *The Dictionary of Occupational Titles* further identifies the occupation as requiring the capacity for Light Work and has a highly skilled occupation with an SVP of 8.

20. *The Dictionary of Occupational Titles* defines Light Work:

Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lift ed may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

21. By 2020, Dr. Kitzman was less and less able to perform his occupational duties to contribute to the business. As a partner in the business, he remained compensated at his full salary through December of 2020, but that was unsustainable for the business.

22. As Dr. Kitzman's condition deteriorated further, he became unable to perform most of the tasks associated with his position and was unable to maintain a full-time work schedule and

4

on November 16, 2020, Dr. Kitzman submitted a claim for long term disability benefits under the Plan.

23. Beginning on January 1, 2020, Stanard & Associates, Inc. reduced Dr. Kitzman's salary by 80%.

24. On January 7, 2021, Dr. Russell Z. Szmulewitz, M.D., the University of Chicago Medicine, provided a statement to Unum:

> My patient, Brian Kitzman, has been medically diagnosed with metastatic prostate cancer. Mr. Kitzman is currently receiving androgen deprivation therapy for his condition which has greatly impacted his functional status.
>
> Due to his condition and treatments, daily activities are limited. Mr. Kitzman experiences mental fogginess, general weakness, fatigue, depression/anxiety which can be attributed to his treatments as well as his stage 4 cancer, all impacting his ability to work to full capacity.
>
> Due to the unfortunate nature of the patient's health status, I strongly feel that this patient is medically unfit to work and should be placed on medial disability.

25. On January 18, 2021, Dr. Szmulewitz further detailed Dr. Kitzman's androgen deprivation therapy[1] as well as its impact on Dr. Kitzman's functional capacity. (Exhibit B).

26. Beginning on March 1, 2021, based on Dr. Kitzman's further decreased capacity to perform his occupation, Stanard & Associates, Inc. reduced his salary to 50%.

27. The Plan defines Disability:

> You are disabled when Unum determines that:
>
> - you are **limited** from performing the **material and substantial** duties of your **regular occupation** due to your **sickness or injury**; and
>
> - you have a 20% of more loss in your **indexed monthly earnings** due to the same sickness or injury."
>
> You must be under the regular care of a physician to be considered disabled.

---

[1] Medical literature verifies side effects including the flare phenomenon, hot flashes, loss of libido, erectile dysfunction, muscle wasting, anemia, and osteoporosis. Mark A Perlmutter, MD and Herbert Lepor, MD, *Androgen Deprivation Therapy in the Treatment of Advanced Prostate Cancer*, Rev Urol. 2007; 9(Suppl 1): S3–S8.

(Exhibit A, Page 16).

28. The Plan further defines: "**LIMITED** means that you cannot or are unable to do."

(Exhibit A, Page 32).

29. The Plan also defines:

**MATERIAL AND SUBSTANTIAL DUTIES** means duties that:
- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified.

(Exhibit A, Page 32).

30. The Plan defines **REGULAR OCCUPATION**:

means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

(Exhibit A, Page 33).

31. As of January 1, 2021, Dr. Kitzman satisfied both the functional loss requirement of the disability definition and the loss of earnings requirement.

32. On February 1, 2021, Unum denied Dr. Kitzman's LTD claim stating in part:

We determine that your disability and your conditions do not cause you to have the need of restrictions or limitations in your functional capacity that preclude you from continuing to perform your occupational duties throughout the policy's elimination period.

33. Further in that letter, Unum indicated that it had identified Dr. Kitzman's "date of disability" as January 24, 2020.

34. Dr. Kitzman appealed Unum's decision in a letter dated March 2, 2021. In that letter Dr. Kitzman communicated that Unum did not have a clear and accurate understanding of his cancer treatment plan and its specific side effects as well as the physical requirements of his occupation.

35. Dr. Kitzman explains in his appeal letter:

6

> I have metastatic castration resistant prostate cancer with a germline mutation in my BRCA2 gene which prevents my DNA from repairing itself. This is a particularly aggressive form of prostate cancer for which there is no cure. I will most likely not be alive in three to five years. So far, I have endured palliative radiation to mitigate, not eliminate, the pain from multiple metastatic lesions on my spine (one of which has caused a severe compression fracture), six rounds of docetaxel chemotherapy, three cycles of Sipuleucel-T immunotherapy, and 4 ½ years of ongoing androgen deprivation therapy. There is more to come. I have not been the same since chemotherapy in 2016-2017. I do not sleep well, contend with constant fatigue, wipe away sweat multiple times each day from hot flushes, wrestle with a back that mostly aches, or at least tingles all of the time, and take naps each and every day to simply get through the day.

36. Dr. Kitzman has been receiving Androgen Deprivation Therapy for approximately 5 years. Dr. Kitzman provides the following explanation of the treatments and the side effects in his appeal letter:

> Indeed, the fact that Unum reduces my treatment plan to a benign "maintenance androgen suppressive regimen of Lupron alone" suggests a lack of understanding and appreciation for the consequences of long-term use of androgen deprivation therapy. The goal of androgen deprivation therapy is to induce medical castration in order to deprive the male body of cancer feeding testosterone. Due to its profile of side effects, it is not used for low-risk prostate cancer. For men with intermediate risk disease, it is used for four to six months. For men with high risk disease, which is still localized to the prostate, it is given for two to three years. Long term use of androgen deprivation therapy is reserved for the worst of the worst advanced prostate cancer which has metastasized outside of the prostate. This is my case. The side effects of androgen deprivation therapy are well documented throughout the oncology literature and are compounded with its long-term, non-intermittent use. Well documented, commonly accepted side effects include: hot flushes, osteoporosis, fatigue, insomnia, depression, cognitive decline, gynecomastia, erectile dysfunction and metabolic syndrome.

37. Dr. Kitzman goes on to explain that by not communicating with his treating physician or a qualified Oncologist with experience with Androgen Deprivation Therapy he does not believe that Unum is getting a proper understanding on the physical impact the of the treatments.

7

38. Also in the March 2, 2021 appeal letter, Dr. Kitzman provides a detailed explanation of the type of work he has been doing as an Industrial Organizational Psychologist and the physical demands that his job requires.

39. Unum denied Dr. Kitzman's appeal in a letter dated June 18, 2021. In that determination letter, Unum again cites the date of January 24, 2020 as the disability date and concluding that Dr. Kitzman was not continuously disabled for the 90-day elimination period as they believe he is capable of Light Work.

40. All required administrative appeals seeking the award of disability benefits have now been exhausted. Therefore, this matter is ripe for judicial review.

41. Plaintiff became disabled under the terms of the Plan as of January 1, 2021. Dr. Kitzman has been and continues to be disabled as defined by the provisions and terms of the Plan.

42. Such benefits should continue under the terms of the Plan as long as Dr. Kitzman continues to meet the conditions for receipt of disability benefits.

## COUNT 1 – BENEFIT CLAIM

43. Dr. Kitzman incorporates by reference paragraphs 1-42 of this Complaint.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against Defendant and that the Court order Defendant to pay all disability benefits to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled;

B. That the Court order Defendant to pay Plaintiff prejudgment interest at the prevailing prime rate;

C. That the Court order Defendant to continue to pay Plaintiff disability benefits so long as he continues to meet the Policy's terms and conditions;

   D. That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g); and

   E. That Plaintiff recover any and all other penalties, damages, and relief to which he may be entitled, as well as the costs of suit.

Respectfully submitted,

Dated: November 1, 2021

/s Jennifer M. Danish
Jennifer M. Danish
One of the Attorneys for Plaintiff

Jennifer M. Danish
Pamela Swiatkowski
Bryant Legal Group PC
55 E Monroe St, Ste 1460
Chicago, Illinois 60603
Voice (312) 235-4886
Fax (312) 254-3140

Brian Kitzman
jdanish@bryantlg.com